

**ORDERED in the Southern District of Florida on June 27, 2011.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:

SANFORD PHILLIP BERRIS,                           Case No.  08-13940-BKC-AJC
                                                                    Chapter 7

    Debtor.
_____/

ALAN GOLDBERG, Trustee, and
ROSE MARIE BARRETT,

    Plaintiffs,
vs.                                                                Adv. No. 09-1182-BKC-AJC-A

SANFORD PHILLIP BERRIS,

    Defendant.
_____/

## MEMORANDUM DECISION AND ORDER OVERRULING ALL OBJECTIONS TO DISCHARGE AND DIRECTING ISSUANCE OF DISCHARGE TO DEBTOR

    THIS MATTER came before the Court for trial upon Plaintiffs' Second Amended

Complaint Objecting to Discharge of Debtor pursuant to 11 U.S.C. §727(a)(2) - (6).  The Court

has read and reread the record and after much deliberation, finds no basis to deny the Debtor his discharge. The Court just does not view the evidence as painting the Debtor so sinister as the Plaintiffs would have this Court believe him to be. The evidence, quite simply, shows a poor businessman in a high risk business in a bad economy in the middle of a hurricane. Such a confluence of events lead to unfortunate circumstances for the Debtor and his creditors.

Upon consideration of the evidence adduced at trial, the Court's observation of the demeanor and candor of the witnesses, the documentary evidence presented, the Court's recollection of previous hearings raising some of the same issues as in Plaintiffs' Second Amended Complaint, and being otherwise duly apprised, the Court makes the following Findings of Facts and Conclusion of Law:

## FINDINGS OF FACT

Defendant Sanford Berris filed a voluntary petition for relief under Chapter 7 of Bankruptcy Code on March 31, 2008. Plaintiff Alan Goldberg was duly appointed as Chapter 7 Trustee. Co-Plaintiff Rose Marie Barrett is a creditor of the Debtor who holds a Summary Final Judgment against the Debtor dated January 29, 2008, for the sum of $1,186,725.70. On February 13, 2009, Plaintiffs filed the instant adversary proceeding, and on September 2, 2009, Plaintiffs filed their Second Amended Complaint seeking a denial of discharge pursuant to 11 U.S.C. §§727(a) (2), (3), (4), (5) and (6).

Prior to his bankruptcy filing, Defendant was involved in a number of business endeavors, including extensive real estate investment activities in Key West and Fort Lauderdale, Florida, as well as some limited holdings in the State of Michigan. In connection with these business endeavors, Defendant was a principal in several entities, as disclosed on his Bankruptcy Schedules and Statement of Financial Affairs. He was also involved in a number of real estate

investments titled in the names of his friends, family members and business associates, as disclosed in his Statement of Financial Affairs (Item #14 of his Statement of Financial Affairs).

The Defendant testified at trial that he prepared the initial schedules himself through an interactive petition preparation software program, then reviewed same with his counsel before executing the documents under penalty of perjury.

The Plaintiffs allege that they made new discoveries through depositions revealing the Debtor had certain unwritten arrangements with his friends or family members wherein he had invested monies in properties well before his bankruptcy was contemplated with an unwritten understanding that, should such properties increase in value and be sold later at a profit, he would share in any such profits. It is without dispute that, at the time that the Debtor filed his petition, there was no equity in any of the subject properties about which he testified.

Plaintiffs allege that certain monies derived from the various properties were improperly or fraudulently transferred to Defendant's friends and family members while Defendant asserts that any monies so transferred were rents or profits belonging to those third parties to which the Debtor was not entitled and that the Debtor was merely acting in a managerial capacity for said properties. Plaintiffs further assert that the Defendant's discharge should be denied for failure to disclose transfers of property on his Schedules and any amendments thereto.

Plaintiffs also focused on the Debtor's alleged transfer of certain "balance transfer" checks to his partner, Steve Rydman.  Mr. Rydman testified he utilized the checks to open a bank account in Michigan and deposited the checks into the account to maintain their home they share in Michigan and pay their living expenses.  For the reasons which follow, this Court finds that the Plaintiffs have failed to sustain their burden of proving that the Debtor should be denied his Discharge.

## CONCLUSIONS OF LAW

Plaintiffs seek a denial of the Defendant's discharge pursuant to 11 U.S.C. §§727(a)(2), (3), (4), (5) and (6). In Count I of their Second Amended Complaint, the Plaintiffs seek a denial of discharge pursuant to 11 U.S.C. §727(a)(2), which provides:

(a)  The court shall grant the debtor a discharge, unless--

(2)     the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

　　(A)     property of the debtor, within one year before the date of the filing of the petition; or

　　(B)     property of the estate, after the date of the filing of the petition.

Section 727(a)(2) provides that the discharge of a debtor may be barred when the creditor proves that the debtor made a transfer of his property with the intent to hinder, delay, or defraud a creditor within one year before the date of filing of the bankruptcy petition. To bar a debtor's discharge does not require a showing of fraud if the debtor transferred the property with intent to hinder or delay a creditor. NCNB Texas National Bank v. Bowyer (Matter of Bowyer), 916 F.2d 1056, 1059 (5th Cir. 1990); Smiley v. First National Bank of Belleville (Matter of Smiley), 864 F.2d 562, 568 (7th Cir. 1989).

To sustain an objection to discharge, specific proof is required that clearly establishes intent on the part of the debtor to conceal assets, hinder and delay creditors, to make false oaths, or to conceal property.  Such proof may not be by inference and must be positive.  Matter of Vogel, 16 B.R. 546 (Bankr. S.D.Fla. 1981).  The provisions denying a discharge are generally construed liberally in favor of the debtor and strictly against the creditor.  In re Jones, 490 F.2d

452 (5th Cir. 1974).  To sustain an objection under section 727(a)(2) and pursuant to FRBP 4005, the petitioning creditor bears the burden of proving facts sufficient to deny discharge by a preponderance of the evidence, Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (191).

The treatise Collier on Bankruptcy, at 4 Collier on Bankruptcy §727.02 at 727-15 through 16, explains:

> Although actual intent must be shown, a finding of actual intent must be based on circumstantial evidence or on inferences drawn from a course of conduct.  This is because a debtor is unlikely to testify that the intent was fraudulent.  Thus a court may look to all the surrounding facts and circumstances . . . .  The fact that valuable property has been gratuitously transferred raises a presumption that such transfer was accompanied by the actual fraudulent intent necessary to bar a discharge under section 727(a)(2) . . . .  If an intent to hinder, delay or defraud a creditor or an officer charged with custody of the property of the estate is shown, the creditor or officer need not be ultimately defrauded by the debtor's acts in order to bar his discharge.

Factors which courts have considered in determining whether a discharge should be barred pursuant to 11 U.S.C. § 727(a)(2) include:

> 1. Whether the debtor obtained credit to purchase exempt property;
>
> 2. Whether the conversion of non-exempt to exempt occurred after the entry of a large judgment against the debtor;
>
> 3. Whether the debtor engaged in a pattern of "sharp dealing" prior to the bankruptcy;
>
> 4. Whether the conversion rendered the debtor insolvent;
>
> 5. Whether the amount of assets was so significant as to be adverse to the "fresh start" policy of the Bankruptcy Code;
>
> 6. Whether the Debtor was involved in pre-bankruptcy estate planning; and
>
> 7. whether the debtor converted all of his remaining assets from non-exempt to exempt status.

See Bowyer, 916 F.2d 1056; Northwest Bank Nebraska, N.A. v. Tyeten, 848 F.2d 871

(8th Cir. 1988); Smiley, 864 F.2d 562; First Texas Savings Assoc., Inc. vs. Reed (Matter of

Reed), 700 F.2d 986 (5th Cir. 1983).  The burden of proof lies with the creditor to show facts

sufficient to justify a denial of discharge.  Exceptions to discharge were not intended and must

not be allowed to override the general rule favoring discharge.  Murphy and Robinson Investment

Co. v. Cross (Matter of Cross), 666 F.2d 873, 879-80 (5th Cir. 1982).

### *Transfers of Property*

*Transfers of Money to Jan Berris*

The evidence established that the Defendant transferred monies to his sister Jan Berris in

connection with a condominium located at 936 Intracoastal Drive in Fort Lauderdale, Florida and

real property located at 206 Golf Club Drive in Key West, Florida as well as in connection with

the April, 2008 sale of what is identified in the Second Amended Complaint as a "FLL Condo".

A review of the Debtor's Schedules reveals that, on item #14 of his Statement of Financial

Affairs under the heading "property held for another person" Debtor lists his sister's ownership

interest in both the 936 Intracoastal Drive property and the 206 Golf Club Drive property,

although the ownership description is more specific with regard to the latter.  The Defendant

consistently testified that he served in a managerial capacity regarding those properties and that

any funds sent to his sister in connection therewith or expended thereon were funds he believed

rightfully belonged to Jan Berris.  As to the proceeds of sale of the FLL Condo, the Defendant

testified that property also belonged to Jan Berris and he likewise believed any proceeds of sale

thereof should rightfully be paid over to Jan Berris.  The Court finds the Defendant to be

forthcoming.  Thus, based upon his testimony and the other evidence of record, and no evidence

to the contrary, it appears the transfers to Jan Berris would not constitute either property of the debtor or property of the estate within the meaning of 11 U.S.C. §541(a). As such, the Court finds that the Plaintiffs have failed to sustain their burden of proving that the Debtor improperly transferred property of the Debtor or property of the estate to Jan Berris and they have not sustained their burden of proving that any such transfers were done with any intent to hinder, delay or defraud a creditor or the Trustee.

*Transfers of Money to Steve Rydman*

The Plaintiffs assert that the Defendant should be denied his discharge because he transferred funds to his partner Steve Rydman on four occasions over a six month period. The Defendant testified that he wrote the subject checks on a credit account with checks supplied directly from the creditor and not from his personal funds. He further testified that he sent the checks directly to Mr. Rydman who then deposited the checks into an account in Michigan. Mr. Rydman deposited them into an account in his name only. While the Plaintiffs believe that the establishment of this account and the deposits therein are indicia of fraud, the Court finds it to be more of an indication of convenience  There is no evidence that any transfers were made with any intent of defrauding creditors. The Defendant's and Mr. Rydman's uncontroverted testimony was that the checks were sent to Mr. Rydman for their mutual benefit as they shared a home in Michigan to which the Defendant regularly visited and that the funds were utilized to maintain that home and their general living expenses.

In Count II of their Second Amended Complaint, Plaintiffs seek a denial of the Defendant's discharge pursuant to 11 U.S.C. §727(a)(3), which provides:

(a)  The court shall grant the debtor a discharge, unless . . .

(3)      the debtor has concealed, destroyed, mutilated, falsified, or failed to keep

> or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The purpose of section 727(a)(3) is to insure that dependable information is supplied to the trustee and to creditors on which they can rely in tracing the debtor's financial history and determining what property has passed through the debtor's hands in the period prior to his bankruptcy. In re Devine, 11 B.R. 487 (Bankr. D.Ma. 1981). The trustee and creditors are entitled to rely on more specific financial data than the debtor's self-serving memory from which they can evaluate the debtor's financial condition and verify the debtor's statements. Id. Section 727(a)(3) protects the creditors' interests by placing responsibility on the debtor to take such steps as ordinary fair dealing and common caution dictates to enable the creditor to determine what the debtor did with his estate. In re LaBonte, 13 B.R. 887 (Bankr. D.Ks. 1981). The records need not be so complete that they state in detail all or substantially all relevant transactions. It is enough that they sufficiently identify the transactions so that intelligent inquiry may be made of them. Id.

The Court concludes that Debtor/Defendant did substantially comply with discovery and disclosure, to the better part of his ability. The Defendant testified that certain of the bank records were unavailable to him because certain banks had changed ownership and other bank records were unavailable to the Defendant because he was simply unable to afford the cost of obtaining same.

The Plaintiffs have failed to bear their burden of proving that the Defendant's failure to provide bank accounts or records was not justified under all of the circumstances of this case, thereby failing to prove the Defendant should be denied his discharge pursuant to 11 U.S.C.

§727(a)(3).

      Plaintiffs further assert that the defendant should be denied his discharge pursuant to 11

U.S.C. §727(a)(4), which provides:

    (a)      The court shall grant the debtor a discharge, unless —

    (4)    the debtor knowingly and fraudulently, in or in connection with the case —

        (A)    made a false oath or account;

        (B)    presented or used a false claim;

        ( C )    gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property or advantage, for acting or forbearing to act; or

        (D)    withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

      The purpose of section 727(a)(4) is to insure that the debtor provides complete and

reliable information for all who may need to read his statements or schedules.  Great Southern

Sav. Bank v. Harman (Matter of Harmon), Ch. 7 Case No. 89-40101, Adv. No. 89-4036 (Bankr.

S.D.Ga. Nov. 28, 1989).  See In re Seablom, 45 B.R. 445 (Bankr. N.D. 1984).  When debtor

makes an honest mistake concerning his statements or schedules, a discharge will not be denied.

See In re Cycle Accounting Services, 43 B.R. 264 (Bankr. Texas, 1984).  Generally the burden of

proof for intent, knowledge, or fraud is upon the movant.  The burden of coming forward with

additional evidence shifts to the debtor once plaintiff presents substantial evidence of intent or

knowledge.  See In re Martin, 698 F.2d 883 (11th Cir. 1983).

      According to the Eleventh Circuit's decision in In re Chalik, 748 F.2d 616 (11th Cir.

1984), a debtor's knowing and fraudulent omission of assets or information necessary to

determine his financial condition is sufficient to bar a discharge under section 727.  All assets are to be listed even if some assets are believed to be "valueless at the time".  Id.

The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by simply asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding.  Such a defense is specious.  Diorio v. Kreisler-Borg Constr. Co., 407 F.2d 1330 (2nd Cir. 1969).  It is immaterial whether he intends to injure his creditors when he makes a false statement.  Creditors are entitled to judge for themselves what will benefit, and what will prejudice them.  Chalik, 748 F.2d at 618.  The Chalik Court deemed the subject matter of a false oath "material" and thus sufficient to bar discharge if it "bears a relationship to the Bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property".  Id.  In Chalik, the Debtor omitted from his Schedules twelve Corporations in which he held a substantial interest.  The Debtor subsequently revealed the interest at a Rule 2004 Examination, but maintained that the omission was immaterial because the Corporations were worthless.  The Eleventh Circuit affirmed denial of discharge, finding that the omission interfered with the investigation of the Debtor's financial condition, prior dealings, and the disposition of his property. The Eleventh Circuit has also held that discharge pursuant to 11 U.S.C. § 727(a)(4)(A) should not be granted where the Debtor knowingly and fraudulently made a false oath or omission in connection with its bankruptcy proceeding.  In re Raiford, 695 F.2d 521, 522 (11th Cir. 1983).

The requirement that the false oath be material, for dischargeability purposes, is satisfied if the false oath bears a relationship to the Debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or existence and disposition of the Debtor's property. 11 U.S.C. § 727(a)(4)(A); Chalik, supra; In re Mukerjee, 98 B.R. 627 (Bankr. D.N.H. 1989).

Denial of discharge is justified even though assets were subsequently disclosed to the Trustee at a creditors meeting.  In re Evans, 106 B.R. 722 (Bankr. M.D.Fla. 1989).

The Plaintiffs plead in their Second Amended Complaint that the Defendant failed to disclose interests in property in which he was not on title but in which he would have possibly shared an interest in the event said properties were later sold at a profit through the unwritten understanding that he had with friends and family members and to which he testified.  The Plaintiffs assert that the Defendant should be denied his discharge for an alleged failure to list an interest in those properties titled in other parties' names but in which he allegedly held an interest.

However, consistent with Defendant's testimony, the evidence indicates that the Defendant did not list those alleged interests because there was no equity in any of the subject properties at the time he filed his petition, there was no such interest to list and therefore he did not make a false oath in listing something that did not exist.  For the reasons which follow, the Court agrees that, under these specific facts and circumstances, the Defendant did not make a false oath such that he should be denied his discharge.

Section §541(a)(1) defines "property of the estate" as comprising "all legal and equitable interests of the debtor in property as of the commencement of the case".  The terms "legal interest" and "equitable interest" as used in §541(a) are construed broadly.  In re Cattafi, 237 B.R. 853 (Bankr. M.D. Fla. 1999).  Property in which the debtor holds a legal interest, but not an equitable interest, becomes property of the estate only to the extent of the debtor's legal interest in such property. In re B.I. Fin. Serv. Group, Inc., 854 F.2d 351 (9th Cir. 1988).  "All legal or equitable interests" that a debtor must list as assets at the commencement of a bankruptcy case include legally enforceable rights under state law.  In re Carlson, 263 F.3d 748 (7th Cir. 2001).

Pursuant to the statute of frauds, any conveyance of an interest in real property must be evidenced by a writing.  The Plaintiffs produced no evidence of a legally enforceable right which would have passed to the estate.

The definition in §541 does not create or define property interests, Matter of Oxford Mgmt., Inc., 4 F.3d 1329 (5th Cir. 1993), and the estate's legal and equitable interests in property rise no higher than those of the debtor, and the estate only includes property to which the debtor would have a right if the debtor were solvent.  In re Rodgers, 333 F.3d 64 (2nd Cir. 2003).  An estate includes all legal claims owned by the debtor, which claims are vested in the bankruptcy trustee, who serves as the estate's legal representative.  In re Carribbean K Line, Inc., 288 B.R. 908 (S.D. Fla. 2002).  While broad in scope, the definition of "property of the estate" as including all legal and equitable property interests that the debtor possessed at the commencement of the case, is nonetheless subject to temporal limitation.  In re Bracewell, 322 B.R. 698 (M.D. Ga. 2005).

"While the scope of §541(a)(1) is broad, it is not without limits; it is limited temporally by the plain language of the statute to interests that exist as of the commencement of the case, and is further limited by the scope and definition given to the phrase "all legal and equitable interests".  In re Vote, 261 B.R. 439, 442 (8th Cir. BAP 2001).  In Vote, the Eighth Circuit Bankruptcy Appellate Panel addressed the issue of whether a trustee had an interest in post-petition payments a debtor received pursuant to crop assistance or disaster relief programs that were enacted post-petition.  The bankruptcy court determined that the right to receive payments did not exist at the time the debtor filed bankruptcy and, by extension, the payments themselves did not become part of the bankruptcy estate pursuant to 11 U.S.C. §541(a)(1) or (7).  On appeal, the Eighth Circuit Bankruptcy Appellate Panel agreed with the bankruptcy court that the debtor

had no cognizable right to the subject payments at the time he filed for bankruptcy.  The Court reasoned that, <u>at best</u>, as of the date of the filing of his petition, the debtor may have had an expectation that Congress would enact legislation authorizing crop disaster or assistance payments to farmers affected by the pre-petition weather condition, but that there were no assurances that said authorization would occur or that the debtor would qualify if so authorized.

Here, the Debtor/Defendant, Sanford Berris, given the state of the real estate market as of the date of the filing of his petition, firmly established that there was no equity in the properties in which he may have had a "handshake deal" to share in any potential profits upon sale thereof.  Hence, he had no property interest in same within the meaning of 11 U.S.C. §541(a) at the time of the filing of his petition and he is not therefore held to have failed to disclose on his Schedules that which did not exist.

Plaintiffs' reliance on the Eleventh Circuit's decision in <u>Chalik</u>, 748 F.2d at 616 is misplaced.  Indeed, this Court agrees that the debtor should not decide what is "material" to disclose in his bankruptcy schedules, or determine whether a business relationship or holding is worthless and thus not worthy of disclosure.  Furthermore, creditors are entitled to full disclosure and may judge for themselves what will benefit and what will prejudice them.  This Court remains committed to the holding in <u>Chalik</u>, but the facts of this case differ vastly from those of <u>Chalik</u>.

Mr. Chalik had business dealings with 12 Florida corporations in which he was the sole or controlling stockholder; but he failed to list on his Bankruptcy Schedules 5 of the corporations with combined total assets in excess of $2.1 million and monthly income in excess of $250,000.00 as recently as within two years of the filing of his bankruptcy petition, <u>in response to a specific inquiry on his schedules</u> regarding business interests held within the preceding six

years.  Mr. Chalik clearly made a false oath and it was not up to him to decide what was or was not material to the court, the trustee and his creditors.

Unlike in Chalik, every indication to this Court is that the Defendant Sanford Berris was honest and forthcoming throughout his bankruptcy case.  The Court notes that he listed an interest in seven parcels of real property on his Schedule "A", with detailed explanation of his ownership interests, that he listed various bank accounts, together with detailed explanation of the purpose of said accounts and the source and purpose of the funds therein, that he listed an ownership interest in six businesses, again with detailed explanation, and that he properly listed some eleven interests in various properties held by or controlled by the debtor for the benefit of third parties under item #14 of his Statement of Financial Affairs entitled "property held for another person".  This Defendant's Schedules do not depict one who is trying to conceal assets. In addition, the deposition transcripts, together with the Court's observation of the demeanor and candor of Mr. Berris at trial reveal an honest and forthright Debtor deserving of a discharge in bankruptcy.  The material omissions of Mr. Chalik and the disclosures, or alleged non-disclosures, of Mr. Berris are very different in nature and scope.

As to income received from the management of the properties, although the Plaintiffs argue that the Defendant received several thousand dollars per month, the Plaintiffs produced no evidence at trial to establish this claim.  The testimony demonstrates that the money "received" was used to maintain the condition of the properties and the servicing of debt on the properties.

With respect to whether Defendant failed to satisfactorily explain any loss of assets or deficiency of assets to meet his liabilities, pursuant to 11 U.S.C. §727(a)(5), and whether the Debtor has refused to obey a lawful order of this Court, pursuant to 11 U.S.C. §727(a)(6), broad discretion is vested in the Bankruptcy Court to decline to grant a discharge in bankruptcy where

the debtor does not adequately explain a shortage, loss, or disappearance of assets.  <u>In re Martin</u>, 698 F.2d 883, 886 (7th Cir. 1983). However, in this case, the Court is not persuaded to deny the Debtor his discharge.  The Defendant was a victim of a financial disaster in the form of a sudden and extreme downturn in the housing market, which downturn forced him into bankruptcy.  The problem was particularly exacerbated in Key West, Florida, which took a double "hit" in the form of Hurricane Wilma, wreaking havoc and causing excessive property damage.  The Court finds sufficient the Defendant's explanation that the loss of his assets is a direct and proximate result of the declining housing market.

For the foregoing reasons, the Court finds that the Plaintiffs have failed to sustain their burden of establishing that the Defendant should be denied his discharge pursuant to 11 U.S.C. §727(a)(2), (3), (4), (5), or (6).  Accordingly, it is

ORDERED AND ADJUDGED that a Final Judgment on the Second Amended Complaint is entered in favor of the Defendant on all Counts and the Clerk of Court is directed to issue a Discharge of Debtor in favor of the Defendant Sanford Phillip Berris forthwith.

###

Copies to:

David Marshall Brown, Esq.
Kenneth B. Robinson, Esq.
Jason Slatkin, Esq.